# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS B. SHREVE, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 08-123 Erie |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Plaintiff, Thomas B. Shreve, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff filed an application for SSI on September 9, 2005, alleging that he was disabled since May 31, 2004 due to anxiety and depression (Administrative Record, hereinafter "AR", at 40-42; 69). His application was denied and Plaintiff requested a hearing before an administrative law judge ("ALJ") (AR 34-39). A hearing was held on October 19, 2007 and following this hearing, the ALJ found that Plaintiff was not disabled at any time through the date of his decision and therefore was not eligible for SSI benefits (AR 16-29; 293-311). Plaintiff's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny the Plaintiff's motion and grant the Defendant's motion.

### I. BACKGROUND

Plaintiff was born on August 29, 1975 and was 32 years old at the time of the ALJ's decision (AR 20). He graduated from Clarion University in 2002 with a degree in fine arts with a

major in graphic design (AR 193-194). Since graduation, he has worked for periods of several months as a barista, a gallery assistant and as a graphic designer for a newspaper (AR 70).

Plaintiff's medical records reflect a history of psychiatric treatment and/or hospitalizations due to depression and alcohol abuse. He was treated by Roberta Kahler, M.D. for his complaints of depression who prescribed medication (AR 131-136). On July 14, 2004, Plaintiff reported by telephone that the Prozac prescribed by Dr. Kahler was not working (AR 136).

On July 19, 2004, Plaintiff was evaluated at the Venango County Mental Health Center (AR 193). He reported a two or three year history of depression, stating that "many of his issues" were related to the fact he had a college degree and was unable to locate employment in the area (AR 193). He indicated that it was difficult to find a job and he was receiving Department of Public Welfare funds (AR 193). Plaintiff admitted that he abused alcohol and reportedly began drinking in 2000 when his wife left him (AR 194). He stated that he last used alcohol in May 2004, prior to undergoing detoxification at Turning Point Chemical Dependency Treatment Center and had recently begun attending Intensive Outpatient (IOP) sessions for substance abuse (AR 193-194). Plaintiff complained of mild panic attacks, poor concentration, mood swings and feeling emotionally distanced from people (AR 194). He reported suicidal ideation but no plan and stated that his self-esteem fluctuated with his moods (AR 194). Plaintiff reported that he took Prozac as prescribed by Dr. Kahler, who suggested he seek psychiatric counseling for his anxiety and depression (AR 194). Plaintiff was scheduled for outpatient counseling (AR 195).

Plaintiff underwent a psychiatric evaluation at the Regional Counseling Center on September 14, 2004 performed by Caryn Dudinsky, P.A. (AR 265-267). He complained of depression and increased anxiety due to moving back home and unemployment in his chosen field (AR 265). Plaintiff reported that he discontinued taking Zoloft as prescribed by Dr. Kahler and did not find Prozac to be helpful (AR 265). He admitted to a past history of alcohol abuse and undergoing drug and alcohol treatment, but claimed he had been sober since May 2004 (AR

265). Plaintiff reported that living with his parents was better than being homeless and that he was contemplating applying for disability in the hopes of being able to live on his own (AR 266). On mental status examination, Ms. Dudinsky noted that Plaintiff's mood was depressed, his affect was eythymic, although he was able to smile and laugh a bit at times (AR 266). His thought processes were linear and coherent and his intelligence was above average (AR 266). Ms. Dudinski diagnosed him with general anxiety disorder, dysthymia, major depressive disorder episode in the past and alcohol dependence in early remission (AR 266). She assigned him a Global Assessment of Functioning ("GAF") score of 50[1] and prescribed a trial of Gabitril and Wellbutrin (AR 267).

Plaintiff returned to the Regional Counseling Center on November 10, 2004 and reported that he was without medication for approximately one month since he lost his medical access card (AR 264). He indicated that Wellbutrin helped his mood and the Gabitril was very helpful for his anxiety (AR 264). Ms. Dudinsky noted that his mood was fair, his affect was appropriate, his eye contact was good and his thoughts were coherent (AR 264). She assessed Plaintiff with a history of generalized anxiety disorder, dysthymia, major depressive disorder and alcohol dependence (AR 264). She continued his current medication regime since he seemed to be doing fairly well (AR 264).

When seen by Ms. Dudinsky on December 22, 2004, Plaintiff reported that he continued to do well overall in terms of his anxiety but was more depressed (AR 263). His mood was fair, somewhat more downcast, but his thoughts were coherent (AR 263). Her assessment remained the same and she added Lexapro to his medication regime (AR 263).

Plaintiff was apparently again admitted to Turning Point on July 31, 2005 and was

---

[1]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 41 and 50 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

discharged on August 16, 2005 after successfully completing the program (AR 137).

In August 2005, Dr. Kahler completed a Pennsylvania Department of Public Welfare Employability Assessment Form stating that Plaintiff was temporarily disabled from February 20, 2005 until February 20, 2006 due to severe depression (AR 139). Dr. Kahler also completed a Health-Sustaining Medication Assessment Form on August 23, 2005 and indicated that Plaintiff suffered from severe depression, was taking Wellbutrin and was incapacitated when not on medication (AR 138).

On October 5, 2005, Plaintiff returned to the Regional Counseling Center for a medication management visit and was seen by Janis Pastorius, PA-C (AR 262). He complained of depression and increased anxiety, but was not taking his medications because he was "out of his Medicaid [c]ard" (AR 262). Plaintiff claimed that his primary care physician gave him medication samples but they did not alleviate his symptoms (AR 262). On mental status examination, Ms. Pastorius reported that his eye contact was good, his mood was depressed with his affect appropriate to his mood, and his thoughts were logical and well organized (AR 262). Ms. Pastorius assessed Plaintiff with a history of generalized anxiety disorder, dysthymia, major depressive disorder and alcohol dependence (AR 262). She started him on Seroquel and Paxil and he was given a coupon for free medications (AR 262).

When seen by Ms. Pastorius on November 30, 2005, he reported an improvement in his anxiety since beginning the Paxil (AR 261). He was able to leave home and appear in public places, and he reportedly held an art show at a local coffee shop and sold a painting (AR 261). He reported no depressive symptoms and was sleeping and eating well (AR 261). On mental status examination, Plaintiff exhibited good eye contact, his speech was clear and coherent, his mood was less anxious, with his affect appropriate to his mood, and his thoughts were logical and well organized (AR 261). Ms. Pastorius' assessment remained unchanged and she increased his Paxil dosage and continued him on Seroquel (AR 261).

On December 18, 2005, Plaintiff presented to the UPMC Northwest Hospital for

4

voluntary admission due to depression (AR 147). He complained of sleep disturbance, poor appetite, low energy level, feeling tired, hopeless, helpless and poor concentration (AR 147). He reported taking Paxil and Seroquel with poor response (AR 147). His alcohol level was 140 mg/dl upon admission (AR 147). He reported a history of DUI's and blackouts following alcohol consumption and indicated that he typically drank 20 beers and usually passed out once every few weeks from drinking (AR 162). It was recommended that he work with a counselor to address his drug and alcohol problem and attend Alcoholics Anonymous meetings (AR 164). Plaintiff was treated with Effexor and Seroquel and gradually improved during his four-day hospitalization (AR 147). His diagnosis on discharge was major depressive disorder recurrent and alcohol dependence (AR 146). Plaintiff's GAF score upon discharge was 50 (AR 146).

On January 27, 2006, Plaintiff underwent a clinical psychological disability evaluation performed by Robert P. Craig, Ph.D. pursuant to the request of the Commissioner (AR 168-171). Plaintiff claimed disability based on anxiety and depression (AR 168). Dr. Craig reported that he was attentive, cooperative and alert during the evaluation (AR 168). Plaintiff reported that he was "let go" from his job at the newspaper because he was not fast enough and when things became stressful he "shut down" (AR 169). He stated that he had recently been hospitalized for about five days at Northwest Behavioral Health Center, had been undergoing counseling at the Regional County Counseling Center since June 2004 and was on Effexor and Seroquel (AR 169).

On mental status examination, Dr. Craig reported that Plaintiff "presented well" and his behavior and psychomotor activities were within normal limits, although he slowed somewhat as the interview progressed (AR 169). His impulse was good, there were no significant indicators of acting out behaviors and no indications of any homicidal or suicidal ideations (AR 169). Plaintiff reported that he experienced free-floating anxiety but had no feelings of depersonalization or derealization (AR 170). He stated that he "bundled up" his anger and sometimes "worr[ied] about the future" (AR 170). He reported that his medication helped him become more active and he was able to do things around the house and manage his finances (AR

5

170). Dr. Craig reported that he was able to answer a variety of similarities easily, perform serial 7's and perform simple multiplication and division (AR 170). Plaintiff described his remote and long-term memory as "pretty good" and his recent past memory and recent memory was good (AR 170). In general, Plaintiff's decision making skills were in the fair to average range (AR 170). Dr. Craig diagnosed Plaintiff with adjustment disorder with depression, rule out depressive disorder not otherwise specified and assigned him a GAF score of 59[2] (AR 170-171). Dr. Craig did not impose any work-related limitations (AR 172-173).

On March 3, 2006, Douglas Schiller, Ph.D., a state agency reviewing psychologist, reviewed the evidence of record and found that Plaintiff was mildly limited in his daily activities, moderately limited in social functioning and in concentration, persistence and pace, and had experienced one to two episodes of decompensation (AR 184). Dr. Schiller completed a Mental Residual Functional Capacity Assessment form and opined that Plaintiff was "not significantly limited" or only "moderately limited" in all areas of mental work functioning (AR 188-189). He considered Plaintiff's medically determinable impairments as depression and alcoholism (AR 190). Dr. Schiller considered Dr. Craig's report and accorded his opinions great weight (AR 190). Dr. Schiller concluded that Plaintiff was able to carry out very short, simple instructions and had no restrictions in his abilities with regards to basic understanding and memory (AR 190). He found that Plaintiff appeared to be able to meet the basic demands of competitive work on a sustained basis despite the limitations resulting from his impairments (AR 190).

Plaintiff returned to the Regional Counseling Center on March 13, 2006 and relayed the circumstances of his previous hospitalization in December 2005 for severe depression (AR 259). He reported that at the time of his admission he was self medicating with alcohol, but claimed that he had not had any alcohol since his discharge from the hospital (AR 259). He reported that he continued to have depression and anxiety symptoms (AR 259). He claimed that while the

---

[2]Scores between 51 and 60 indicate "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

Effexor was helping, it wore off during the day (AR 259). Plaintiff requested a reduction in his Seroquel dosage stating it caused over sedation the following day (AR 259). He reported continued financial stresses, stating that he had hoped to use Social Security benefits, which were recently denied, to move out on his own and continue his art work (AR 259). On mental status examination, Ms. Pastorius reported that Plaintiff had good eye contact, clear and coherent speech, a fair mood and logical and well organized thoughts (AR 259). He denied any suicidal or homicidal ideations, intent or plan (AR 259). Ms. Pastorius assessed him with generalized anxiety disorder, dysthymic disorder, major depressive disorder and continuous alcohol dependence (AR 259). Plaintiff was referred to the partial hospitalization program for drug and alcohol treatment but refused (AR 259). He also refused both inpatient rehabilitation and outpatient drug and alcohol counseling (AR 259). Ms. Pastorius advised him to abstain from alcohol, increased his Effexor dosage and reduce his Seroquel dosage (AR 259).

Plaintiff again presented to the UPMC Northwest Hospital for voluntary admission on March 13, 2006 due to depression (AR 216-246). He complained of increased sadness, depression, poor sleep and "binge drinking" (AR 216; 231). He also reported "huffing" the past month (AR 218). Plaintiff's blood alcohol level on arrival was 300 mg/dl and he expressed suicidal ideations (AR 231). Yogesh D. Maru, M.D., reported that Plaintiff's hospital course was significant for gradual improvement in his mood, symptoms, thinking and affect with biopsychosocial interventions (AR 231). His Effexor was increased and his Seroquel dosage was reduced (AR 231). Dr. Maru reported that Plaintiff participated in psychological and social services, learning extra skills to cope with stress, and his alcohol dependence issues were addressed (AR 231). His discharge diagnosis was major depressive disorder, recurrent and alcohol dependence (AR 232). Dr. Maru reported that on discharge, Plaintiff had a stable affect, his mood was pleasant and good, his thought process was goal directed and he denied any suicidal ideations (AR 232). Dr. Maru further reported that Plaintiff's insight was fair and his judgment was good and he assigned him a GAF score of 50 (AR 232). He recommended

7

Plaintiff follow up with the therapist and addressed compliance issues and substance abuse issues with him (AR 232).

Plaintiff returned to the Regional Counseling Center on July 31, 2006 complaining of feeling down and anxious in mood again (AR 258). On mental status examination, his affect was reported as a "little troubled" and he was diagnosed with depression and anxiety (AR 258). Remeron was added to his medication regime (AR 258).

When seen at the Regional Counseling Center on December 20, 2006, Plaintiff reported that he discontinued the Effexor on his own because it did not help his symptoms (AR 256). He complained of depressive symptoms but stated that his anxiety symptoms were "pretty much controlled" (AR 256). He also complained of poor focus and requested medication for this (AR 256). Plaintiff reported that he had been sober since May 2006 (AR 246). On mental status examination, Plaintiff's affect was reported as appropriate to his depressed mood, he denied any suicidal or homicidal ideations and his thoughts were logical and organized (AR 256). It was noted that Plaintiff had a history of depression and anxiety, and his medications were continued (AR 256-257).

Plaintiff returned to the Regional Counseling Center on March 14, 2007 and reported that he had discontinued the Wellbutrin and Remeron due to migraine headaches (AR 254). It was noted that Plaintiff had been on many medications that he either did not find beneficial or had created adverse side effects per the Plaintiff's report (AR 254). Since discontinuing his medications, Plaintiff reported an increase in his depression and anxiety symptoms (AR 254). The Center planned to seek pre-authorization for Cymbalta (AR 254).

Plaintiff's treatment plan at the Regional Counseling Center dated May 15, 2007 reflected a presenting problem of chronic depression, low energy and no interest, with a diagnosis of major depressive disorder (AR 248). Plaintiff's GAF score was assessed at 55-60 (AR 248).

On June 25, 2007, Plaintiff reported that it was "going good" in therapy but he had discontinued his medications secondary to adverse side effects (AR 253). On mental status

8

examination, Plaintiff presented as tired and sad with a worried affect (AR 253). He was diagnosed with generalized anxiety disorder, major depressive disorder in partial remission and alcohol dependent (since he had admitted to consuming alcohol that month) (AR 253).

Finally, Plaintiff was psychologically evaluated by William J. Fernan, Ph.D. on October 26, 2007 (AR 278-286). Plaintiff reported a poor work history, that he suffered from migraine headaches when he was under significant stress and stated he developed depression and anxiety following the separation from his wife (AR 279). He reported that his symptoms were treated by Dr. Kahler beginning in July 2003, but when his symptoms worsened in September 2003 he was referred to the Regional Counseling Center for treatment (AR 279). He received individual psychotherapy as well as medications, but because of adverse side effects he discontinued the medication (AR 279).

Plaintiff reported that he was moderately to severely depressed with occasional tearfulness, ongoing insomnia, poor appetite and sex drive and had great difficulty initiating and enjoying any activities (AR 279). He claimed he was easily irritated and was withdrawn, spending ninety percent of his time in his room (AR 279). Plaintiff relayed that he was anxious, worried and experienced panic attacks several times per day when he attempted to leave his residence or was around approximately ten people (AR 279). He avoided public places and shopped late at night in order to avoid people (AR 279).

Plaintiff reported that he began self-medicating with alcohol in approximately 2000 (AR 279). He recounted his stay for 14 days at Turning Point in 2005 and his participation in drug and alcohol counseling at the Regional Counseling Center until October 2006 (AR 279). He reported "huffing" a computer-related substance in 2006 for approximately six months (AR 280). He claimed he attended AA meetings on a regular basis and usually did well when abstaining from substances, except when his medications were "not working" earlier in the year (AR 280). He maintained that he had not used any substances during the past six weeks (AR 280). Plaintiff admitted to several legal problems related to his substance abuse, including arrests for public

9

intoxication on one occasion in 2000 and two occasions in 2002 (AR 280). He was also arrested for DUI in 2001 and for trespassing in 2004, and was last arrested in June 2007 for public drunkenness (AR 280).

On mental status examination, Dr. Fernan reported that Plaintiff presented as tense, very anxious and maintained only sporadic eye contact (AR 280). He had moderate to severe difficulty initiating any positive emotion and exhibited an extremely flat and depressed affect (AR 280). His emotional expression was appropriate to his thought content but not to the situation (AR 280). Dr. Fernan further reported that although he experienced thoughts in a spontaneous and normal manner, his answers failed to be goal-directed and he rambled while providing excessive detail (AR 280). His abstract thinking was good, he was fully oriented, and had good remote and recent past memory (AR 280-281). His concentration was extremely poor, with Dr. Fernan noting he was unable to perform serial 7's or basic math calculations (AR 281). His recent memory was poor, as was his immediate attention and memory (AR 281). Dr. Fernan stated that Plaintiff had trouble with impulse control and his social judgment was poor, but his test judgment was fairly good (AR 281).

Dr. Fernan administered the MMPI, but Plaintiff received a profile pattern of "somewhat questionable validity" (AR 281). His personality pattern indicated that he lacked self-esteem and confidence, experienced ongoing debilitating anxiety and depression, and behaved in a very immature and impulsive manner at times (AR 281). Dr. Fernan noted that Plaintiff's last job lasted only one month, he was not involved in any physical activities and spent ninety percent of his time in his room (AR 282). He further noted that Plaintiff must "force" himself to attend AA meetings in an attempt to eliminate his self-medicating with substances, since medications "always" resulted in adverse side effects (AR 282).

Dr. Fernan diagnosed Plaintiff with major depressive disorder, single episode, severe, without psychotic features; panic disorder with agoraphobia; alcohol dependence (in remission; and inhalant abuse (in remission) (AR 282). He assigned him a GAF score of 50 and indicted

that Plaintiff's progress was poor, given the severity and lack of response to treatment of his personal adjustment difficulties, and that he could not manage his own benefits due to his "very significant impulsiveness at times" (AR 282-283). Dr. Fernan opined that Plaintiff was markedly limited in his ability to carry out short, simple and detailed instructions; interact appropriately with supervisors and co-workers; and respond appropriately to changes in a routine work setting (AR 284). He further concluded that Plaintiff was extremely limited in his ability to interact appropriately with the public and respond appropriately to work pressures in a usual work setting (AR 284). Finally, Dr. Fernan opined that Plaintiff's alcohol and/or substance abuse did not contribute to these specific limitations (AR 285).

Plaintiff testified at the Administrative Hearing that the genesis of his problem was the demise of his marriage while still in college (AR 299-300). Following graduation, he worked for a newspaper for approximately one month, but suffered anxiety and panic symptoms which resulted in being laid off for poor work performance (AR 300-301). He testified that he continued to suffer from anxiety attacks, as well as depression (AR 303). He claimed his symptoms caused him to stay in bed five to seven times per month and that he also suffered from depressive episodes that lasted for extended periods of time (AR 304). Plaintiff testified that he had spent approximately ninety percent of his time the last several years in his bedroom and was unable to sustain a routine (AR 305-306). He stated that his medications "might last a week" and then ceased working and also caused side effects (AR 307).

Plaintiff claimed he had been sober for over a month at the time of the hearing (AR 308). He stated that before May 2007 he had been sober for one year, but had "slipped up" in May (AR 309). Plaintiff stated that alcohol was not a "big issue" unless he became extremely stressed out or when his anxiety got to the point where he just wanted to "shut down" (AR 308). He indicated that his last medication caused him to crave alcohol so he discontinued its use (AR 308). Since May, he testified that he had probably abused alcohol five to six times, but it was only to dull the pain or stop the craving caused by the medication (AR 309). Plaintiff testified

11

that he continued to undergo treatment at the Regional Counseling Center (AR 309).

Following this hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to SSI under the Act (AR 16-29). Plaintiff's request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-9). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies

>this burden, the [Commissioner] must grant the claimant benefits
>unless the [Commissioner] can demonstrate (5) that there are jobs
>in the national economy that the claimant can perform. *Ferguson
>v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

In the case of an individual suffering from alcoholism or drug addiction, the Act provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J). This provision effectively bars the award of disability benefits based on alcoholism or drug addiction. *Torres v. Chater*, 125 F.3d 166, 169 (3rd Cir. 1997). The ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and then must determine whether any of the claimant's remaining limitations would be disabling. *See* 20 C.F.R. § 416.935(b)(2); *Sklenar v. Barnhart*, 195 F. Supp. 2d 696, 699 (W.D.Pa. 2002). If the ALJ concludes that the remaining limitations would not be disabling, the ALJ must find that the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(i). If, however, the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is "disabled independent of [his or her] drug addiction or alcoholism and ... [his or her] drug addiction or alcoholism is not a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(b)(2)(ii).

In summary, the Commissioner's disability determination must proceed in four discrete stages:

>First, [the Commissioner] must consider all of the claimant's
>limitations and then use the usual five-step sequential analysis to
>decide whether the claimant is disabled. Second, the
>Commissioner must determine whether there is medical evidence
>of an Alcohol Use Disorder, as defined in the *DSM*. When such
>medical evidence exists, the Commissioner must identify which of
>the claimant's limitations would remain if he stopped using
>alcohol. Finally, the Commissioner must return to the five-step
>analysis to evaluate whether the claimant's remaining limitations

would be disabling.

*Warren v. Barnhart*, 2005 WL 1491012 at *10 (E.D.Pa. 2005).

Here, the ALJ determined that Plaintiff's major depressive disorder, anxiety disorder, alcohol dependence and inhalant abuse were severe impairments, but determined at step three that he did not meet a listing (AR 18-19). Despite his impairments, the ALJ found that he had the residual functional capacity to perform simple, routine, repetitive tasks at all exertional levels (AR 20).[3] However, because of his substance use, the ALJ further found that he could not be depended upon to perform any full-time work activity on a sustained and continuous basis due to recurrent psychological symptoms, including loss of concentration and significant depression, all interrupting the work process and causing work stoppage to such a degree that he would be unable to consistently satisfy the employment demands for eight hours of work per day and 40 hours of work per week (AR 20). The ALJ concluded that, with his substance abuse disorders, Plaintiff was unable to meet the basic demands required to perform work activity on a sustained basis and was therefore disabled (AR 21).

The ALJ next found that Plaintiff would continue to have the severe impairments of major depression and an anxiety disorder even if he stopped the substance use, but that he did not meet a listing (AR 21-22). The ALJ found that absent such substance abuse, Plaintiff retained the residual functional capacity to perform simple, routine, repetitive job tasks at all exertional levels (AR 22). Because the ALJ found Plaintiff would not be disabled if he stopped his substance use, he concluded that his substance abuse was a contributing factor material to the determination of disability, and therefore, he was not entitled to benefits (AR 29). Again, we

---

[3] "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121 (3rd Cir. 2000), quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 416.945(a)(1). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). An ALJ must consider all relevant evidence when determining an individual's residual functional capacity. *See* 20 C.F.R. § 416.945(a)(3); *Burnett,* 220 F.3d at 121.

must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Plaintiff first argues that the ALJ's finding that his substance abuse was a contributing factor material to a finding of disability was not supported by substantial evidence since there was no "medical proof" regarding materiality. *See* Plaintiff's Brief pp. 14-16. Plaintiff's contention that expert opinion evidence is necessary to establish materiality has specifically been rejected by the Third Circuit. *See McGill v. Commissioner of Social Security*, 288 Fed. Appx. 50, 53 (3rd Cir. 2008) (holding that there is no requirement in the statute, implementing regulations or internal guidelines that the materiality finding must be based on expert psychiatric opinion evidence).

More broadly, we find there was substantial evidence to support the ALJ's conclusion that Plaintiff's substance abuse was a contributing factor material to a finding of disability. Here, the ALJ exhaustively discussed Plaintiff's mental impairments and substance abuse issues and ultimately concluded that his mental impairments (absent the substance abuse) did not preclude him from working. In reaching that conclusion, the ALJ relied on the report of Dr. Schiller, the state agency reviewing physician, who concluded that Plaintiff was able to carry out very short and simple instructions, and Dr. Craig's report, a consultative examiner, who found only moderate symptoms and imposed no work restrictions (AR 28). The ALJ also explained that he discounted the opinion of Dr. Fernan, another consultative examiner, who concluded that Plaintiff was disabled (AR 28). The ALJ explained that due to Plaintiff's history of recurrent abuse, he disagreed with Dr. Fernan's finding that Plaintiff's alcohol abuse/dependency was in remission and instead considered his opinion as relating to Plaintiff's functioning when considering his abuse/dependency issues (AR 28). These findings are supported by substantial evidence.

In addition, the record fairly read suggests that Plaintiff's psychological symptoms were capable of being controlled with medication. For example, in November 2004, Plaintiff reported

15

that his medications were helpful in controlling his symptoms (AR 264). One year later, in November 2005, Plaintiff stated that his anxiety symptoms had improved while on the Paxil (AR 261). His hospitalization records in December 2005 and March 2006 record an improvement in his psychological symptoms while on medication (AR 147; 231-232). Finally, Plaintiff informed Dr. Craig during the consultative examination that his medications were "helping [him to] become more active" (AR 170).

Plaintiff next challenges the ALJ's finding that his mental impairments failed to meet Listing 12.04, Affective Disorders. *See* Plaintiff's Brief pp. 16-17. This Listing consists of paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations) and paragraph C criteria (a set of additional functional limitations). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). The required level of severity for 12.04 affective disorders is met when "the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

The paragraph B requirements of Listing 12.04 require at least two of the following:

   1. Marked restriction of activities of daily living; or

   2. Marked difficulties in maintaining social functioning; or

   3. Marked difficulties in maintaining concentration, persistence or pace; or

   4. Repeated episodes of decompensation, each of extended duration[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B). The term "marked" means "more than moderate but less than extreme," and a "marked limitation" is one that seriously interferes with a claimant's ability to "function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.00C. The ALJ found that Plaintiff's affective disorder did not meet part B because the evidence reflected only mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace, and he had experienced only two episodes of decompensation

16

(AR 22).

Plaintiff argues that Dr. Fernan's report demonstrates that he suffers from marked limitations in both social functioning and concentration/persistence/pace. *See* Plaintiff's Brief p. 16. The ALJ found only moderate limitations in these areas however, noting that Plaintiff got along well with his mother and stepfather, and that a psychiatric evaluation revealed his concentration was average (AR 22). Both of these findings are supported by the record (AR 96; 163). While Plaintiff acknowledged he had some difficulty being around people, he nonetheless reported no difficulties in getting along with others (AR 99; 306).

Regarding Plaintiff's concentration, persistence or pace abilities, Dr. Craig opined that he was able to answer a variety of similarities easily, perform serial 7's and perform simple multiplication and division (AR 170). Dr. Craig further opined that his memory was intact and he exhibited fair to average decision-making skills (AR 170). In addition, his treatment providers at the Regional Counseling Center noted that although Plaintiff reported depression and anxiety symptoms, his thought processes were consistently reported as coherent, logical and/or well organized (AR 256; 259; 261-264; 266).

Finally, we observe that Dr. Schiller, the state agency reviewing psychologist, opined that Plaintiff was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his mental impairments (AR 190). Dr. Schiller reviewed the medical evidence of record and concluded that Plaintiff's impairments did not meet or equal the severity requirements of Listing 12.04 because he exhibited mild to moderate (rather than marked or extreme) limitations in three of the functional areas required under Listing 12.04(B) (AR 184). State agency physicians are experts in the field of social security disability evaluations, *see Social Security Ruling (SSR)* 96-6p, whose opinions are treated as expert opinion evidence. *See* 20 C.F.R. § 416.927(f)(2)(i). We find the ALJ's conclusion that Plaintiff failed to meet Listing 12.04 due to his mental impairments is supported by substantial evidence.

In a related argument, Plaintiff argues that because the record raised the question of

17

whether Plaintiff's mental impairments met or equaled a Listing based upon Dr. Fernan's report, the ALJ had a duty to secure the opinion of a medical advisor to opine on the issue. *See* Plaintiff's Brief p. 17. Courts have held that "[w]here the record as it exists at the time of the administrative hearing fairly raises the question of whether a claimant's impairment is equivalent to a listing, a medical expert should evaluate it." *See Schwartz v. Halter*, 134 F. Supp. 2d 640, 659 (E.D.Pa. 2001); *Maniaci v. Apfel,* 27 F. Supp. 2d 554, 557 (E.D.Pa. 1998). We find that these cases are not helpful to the Plaintiff. Here, the ALJ did develop the record with respect to the medical evidence and explained why he rejected medical evidence allegedly supporting the Plaintiff's claimed limitations. The ALJ specifically rejected Dr. Fernan's assessment as to the Plaintiff's functional limitations in these areas, concluding that his opinion related to Plaintiff's limitations when considering his substance abuse (AR 28). Moreover, the state agency reviewing psychologist, Dr. Schiller, opined that Plaintiff's mental impairments did not meet the Listing.

Finally, Plaintiff argues that the ALJ "mischaracterized" the evidence relative to his compliance with his prescribed medication regime and/or failed to appropriately analyze the treatment compliance issues. *See* Plaintiff's Brief p. 17. He contends that treating professionals documented that his medications had failed and that his failure to follow the prescribed treatment regime was excusable due to adverse side effects. The record does not support the Plaintiff's claim that the ALJ mischaracterized the evidence with respect to compliance and/or failed to adequately analyze the issue.

Here, Plaintiff claimed on two isolated occasions he was unable to pay for the medications, yet acknowledged he received free samples from Dr. Kahler and was provided a coupon for free medications from the Regional Counseling Center (AR 262). Plaintiff further claimed the medications prescribed were ineffectual, yet the medical records consistently reflected they were effective in alleviating his symptoms (AR 259; 261; 263-264). For example, when hospitalized in December 2005, Plaintiff claimed that his Paxil was ineffective (AR 147). Two weeks earlier however, Plaintiff reported to Ms. Pastorius at the Regional Counseling

18

Center that his anxiety had improved while on the Paxil and he had no complaints with respect to his other medications (AR 261). Plaintiff also claimed to suffer from medication side effects, but no such problems were reported to Dr. Craig and in fact, Plaintiff reported that his medications were helpful (AR 68-171).

For the foregoing reasons, we find the ALJ's decision is supported by substantial evidence.

## IV. Conclusion

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS B. SHREVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 08-123 Erie |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **ORDER**

AND NOW, this 20th day of January, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 10] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Thomas B. Shreve. The clerk is directed to mark the case closed.

                                                s/ Sean J. McLaughlin
                                                United States District Judge

cm: All parties of record.